THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JASON S. CLEVELAND, Defendant-Appellant.

Fourth District No. 4—92—1036

Opinion filed December 22, 1993.

Daniel D. Yuhas and Judith Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Defendant Jason Cleveland was convicted by a jury in the circuit court of Champaign County of reckless homicide while under the influence of a drug, namely, butane. (Ill. Rev. Stat. 1991, ch. 38, par. 9—3(a).) He was charged by indictment with two counts of reckless homicide. Count I alleged that he drove his vehicle while under the influence of a drug or combination of drugs and failed to maintain a reasonable lookout or attention to the roadway, resulting in the death of Lindsay Waters. Count II alleged the same acts of recklessness, but without any reference to defendant being under the influence of drugs. After his conviction, defendant was sentenced to a term of three years' imprisonment in the Illinois Department of Corrections. He now appeals, claiming the State failed to prove that butane is a drug for purposes of the reckless homicide statute and that evidence was insufficient to convict him. We affirm.

The accident occurred at approximately 3 p.m. on June 19, 1992, on Illinois Route 45 just south of Leverett Road. Route 45 is a four-lane highway, separated by a grassy median. Defendant, then 18 years old, was driving a red convertible with three passengers, 17-year-old Michael Hunter, 15-year-old Bobbie Fitzsimmons and 15-year-old Lindsay Waters. Waters was killed in the accident.

At defendant's jury trial, Michael Hunter testified the teenagers were headed to Champaign when the accident occurred. He sat in the front passenger seat, Fitzsimmons was seated behind defendant and Waters sat behind Hunter. The convertible top was down. Defendant was driving about 70 miles per hour. They were listening to music, and he and defendant were inhaling butane to get high. They did this by putting their teeth on the nozzle and pressing down so the fumes would go into their lungs. After he inhaled he felt numb, but was "pretty much" aware of his surroundings. He and defendant each inhaled about four times. As they approached Leverett Road, Hunter noticed the car going off the left side of the road and onto the median. He called defendant's name, but did not recall whether defendant responded. Defendant appeared to be looking straight ahead and

blinked his eyes quickly, as if he were focusing. Hunter grabbed the steering wheel because he was afraid they were going to wreck. The next thing he remembers is waking up in a field. He had only very minor injuries. Hunter had been in this car the day before and noticed it had been in a wreck. It was hard to steer, although defendant did not say anything to him about that fact on the day of the accident.

On cross-examination, Hunter testified that he does not recall who had the butane canister first or last during the trip to Champaign, or when they last inhaled prior to the accident. The effects of inhaling the butane lasted from half a minute to $1\frac{1}{2}$ minutes. He does not recall telling anyone that he and defendant were inhaling butane.

Edward Galynan testified he was driving northbound on Route 45 at the time of the accident. It was a warm day, the road was dry, and traffic was a little heavy. He first saw defendant's car when it hit the ditch on the left side of the road and then saw it become airborne and overturn. He and his companion stopped their car and went back to the accident scene. The car was upside down in the field. He went over to where defendant was lying on the ground, and defendant asked him how bad the car was. He then told Galynan he was doing propane. A few minutes later defendant said "as we were doing butane." Defendant asked Galynan several times to give him a ride, and Galynan refused.

On cross-examination, Galynan admitted he had told a police officer that defendant had said everyone was doing butane.

Becky Maratea was with Galynan and testified she tended to Hunter as he lay on the ground. She found a bottle of butane near the car.

Kevin Puryear was stationed at Chanute Air Force Base in Rantoul in June 1992. Defendant's car passed his car in the passing lane when he was on Route 45. He estimated the speed of defendant's car to be over 60 miles per hour. He was about 50 yards behind the car when it went off the road. The car had been in the right lane, then went into the left lane, and then kicked up some dust as it appeared to hit the inside of the median, swerve to the right, and go off the road. After Puryear saw the dust kick up on the median, the car swerved hard to the right, made an approximately 80-degree turn, and went into the ditch.

The parties stipulated that Waters died on June 19, 1992, as a result of internal injuries incurred in an accident when she fell from a moving vehicle and struck a concrete culvert.

Donald Bartlett, M.D., a board-certified emergency physician at Carle Foundation Hospital, testified regarding the National Formu-

lary, which is an encyclopedia of various drugs and medications that are available in this country. He rarely has occasion to consult it. The poison index is a computer-based program in three sections—a drug formulary, poison index, and encyclopedia for emergency problems. He stated that he is more familiar with butane as a fuel than as a drug substance. Butane is one of the volatile hydrocarbons, and he believes it is listed in the National Formulary. Butane, if inhaled, could function as an asphyxiant which displaces oxygen from the environment. One of the earlier symptoms would include unconsciousness, since brain cells are the most sensitive. Prior to losing consciousness, a person inhaling an asphyxiant could experience symptoms ranging from fully conscious to unconscious, from mildly tired to stuporous, to being fully unaware of his or her surroundings. Bartlett is not aware of a blood test for presence of an asphyxiant. He treated defendant in the emergency room and stated defendant had no life-threatening injuries, only cuts and bruises. He ordered routine lab tests, X rays, and a CAT scan of defendant's head. Tests were negative, but defendant was admitted to the hospital and kept overnight for observation. In the emergency room, defendant was fairly reliable in giving a history, but he had some slight memory deficits. Defendant did not tell Bartlett he had been inhaling butane.

On cross-examination, Bartlett testified there were times after the accident that defendant could not remember all the details about the accident, which is consistent with having been in an automobile accident. He is not aware of any tests that will determine whether one has butane in his or her system.

Billy Waters, owner of the auto defendant was driving at the time of the accident, testified that in May 1992 he had a minor accident with the auto, where the front fender was slightly dented. After that, he drove the car every day and had no problems with it. He loaned the car to defendant to make the trip to Champaign.

Tim Compton, a paramedic responding to emergency 911 calls regarding the accident, testified that defendant was belligerent and uncooperative at the scene of the accident. He would not sit down and stop moving around as instructed. Defendant told Compton he was fine and wanted to leave.

James Gregory, M.D., testified that he is director of trauma and critical care services at Carle Foundation Hospital. He has had occasion to rely upon and consult the National Formulary, a compendium of lists compiled by the Food and Drug Administration with information about different substances. He believes butane would be listed as a substance. Asphyxiants and butane are categories of substances in-

cluded in the poison index. Butane is a volatile hydrocarbon that can be ignited and used as a fuel. Dr. Gregory's only familiarity with butane is as a fuel. An asphyxiant removes oxygen from the body. From his reading of the poison index, inhaled butane functions as an asphyxiant. Loss of oxygen in the bloodstream causes a complete spectrum of effects, all the way to coma. Initially it would cause a dysphoric state, *i.e.*, where the patient loses contact with his surroundings, possibly begins to hallucinate, and then ultimately loses consciousness. Dizziness and mood disturbances are also effects of asphyxiation.

Dr. Gregory treated Lindsay Waters and defendant. Defendant was quite agitated and belligerent toward hospital staff and the people around him. He was unable to provide Dr. Gregory with helpful identifying information about the two girls in the car and was unclear about what had happened in the accident. However, defendant was able to carry on a complex conversation with Dr. Gregory. He knew where he was, what was going on, and the date. Defendant said nothing about inhaling butane.

On cross-examination, Dr. Gregory stated that in trauma situations people are often upset and anxious. The poison index also lists arrhythmias, vomiting, and hyperventilation as symptoms of inhaling butane.

Todd Ropp, a paramedic also on the accident scene, testified he noticed defendant walking around the field. There were two or three people trying to control him and get him to lie down. Defendant was very restless and agitated, and he argued with those trying to get him to stay quiet. Once he persuaded defendant to lie down on a backboard, defendant continued to say he was fine and wanted to get up.

Terry Costa testified that he is service manager at PDR Automotive, an auto and light truck repair facility in Urbana. He is a certified master technician. He has worked on and inspected vehicles involved in accidents. He examined the car defendant was driving after the accident, and there was no evidence of mechanical failure in the brake system. There were no mechanical failures in the left or right front suspensions. He also examined the steering mechanism and controls, finding everything intact and functional. In his opinion, the car did not have mechanical malfunctions prior to the accident. Its overall condition prior to the accident was above average.

State Police Officer Edward Woods testified that defendant admitted he was the driver of the car. Defendant told him that while he was driving the vehicle began to shimmy in the front and went off onto the median. He lost control of the vehicle. Route 45 is a four-

lane highway, with two southbound lanes and two northbound lanes, with a grassy median in between. He talked again with defendant on June 23, 1992, and defendant stated he could remember nothing about the accident. The day of the accident was a clear, warm, sunny day. Route 45 is asphalt and was dry on the day of the accident.

Bobbie Fitzsimmons testified on defendant's behalf that she was his girlfriend at the time of the accident and that she had the canister of butane. She and Hunter inhaled it, but defendant and Lindsay Waters did not. She had the canister first and, after inhaling several times, tossed the canister up to the front seat and Hunter began inhaling from it. She stated she does not remember any of the circumstances surrounding the accident—she only remembers waking up in the hospital.

On cross-examination, Fitzsimmons testified she did not know the butane's effect on her. She admitted she told a State Police officer about nine days after the accident that no one had been inhaling butane.

Defendant testified that he was going approximately 65 or 70 miles per hour at the time of the accident. He stated that Fitzsimmons brought the canister of butane, and she and Hunter were inhaling it. Defendant denied he inhaled the butane. When he reached Leverett Road, he asked Hunter whether he should turn there or keep going straight. Hunter laughed at him—he was "tripping off butane" and would not answer him. After defendant passed Leverett Road, he was in the left lane. He does not know what happened after that, except he believes he remembers Hunter grabbing the wheel. He does not recall talking to paramedics, police officers, or doctors immediately after the accident.

On cross-examination, defendant testified the phrase "tripping off butane" means laughing. He does not know what caused him to veer off the road, but guessed he was not paying attention. He does not recall telling Galynan he was using butane. He might have said it, but he was not using butane.

At the close of presentation of the evidence, defense counsel moved for a directed verdict. The trial court granted the motion as to count II, noting it was uncontested that Hunter grabbed the wheel and there was no basis for an inference beyond a reasonable doubt that defendant's acts caused the vehicle to cross both southbound lanes, leave the roadway, and flip over. The trial court further stated it did not believe a jury could find recklessness in driving at a speed 10 to 15 miles per hour above the speed limit on a straight, level road on a clear, dry day. It concluded the only way a jury could reasonably

find defendant guilty was to find beyond a reasonable doubt that he was under the influence of drugs, which impaired his driving ability to the point where he left the roadway without realizing it, thus setting in motion the sequence of events leading to Lindsay Waters' death. As stated, the jury found defendant guilty as to count I of the indictment.

On appeal, defendant's argument is twofold. First, he argues that the State failed to prove butane to be a "drug" under the definition of that term contained in section 102(t) of the Illinois Controlled Substances Act (Controlled Substances Act) (Ill. Rev. Stat. 1991, ch. 56½, par. 1102(t)). Second, he argues that even assuming butane is a drug, the State failed to prove he was under the influence of butane at the time of the accident. The State counters that the term "drug" is not defined for purposes of the reckless homicide statute. It argues that "drug" is defined as a narcotic or hallucinogen, especially one that is habit-forming (citing Webster's New World Dictionary 429 (1976)).

 The reckless homicide statute provides in relevant part as follows:

"Involuntary Manslaughter and Reckless Homicide. (a) A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly, except in cases in which the cause of the death consists of the driving of a motor vehicle, in which case the person commits reckless homicide.

(b) In cases involving reckless homicide, being under the influence of alcohol or any other drug or drugs at the time of the alleged violation shall be prima facie evidence of a reckless act.

(c) For the purposes of this Section, a person shall be considered to be under the influence of alcohol or other drugs while:

\* \* \*

3. Under the influence of any other drug or combination of drugs to a degree that renders the person incapable of safely driving." Ill. Rev. Stat. 1991, ch. 38, par. 9—3.

 We reject defendant's argument that the State failed to establish butane as a drug for purposes of the reckless homicide statute. First, we feel compelled to note that defendant has waived this argument, because he failed to raise the issue in his post-trial motion. Failure to raise an issue in a written post-trial motion results in waiver of the

issue on appeal. (*People v. Berry* (1984), 99 Ill. 2d 499, 503, 460 N.E.2d 742, 743-44; *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1129.) We also note that in his motions for directed verdict at the close of the State's case and at the close of the evidence, defense counsel did not argue the State had failed to establish butane as a drug for purposes of the reckless homicide statute. However, despite waiver, we find the State properly established butane as a drug for purposes of the reckless homicide statute.

There are no cases dealing with this specific question. Defendant argues the Controlled Substances Act controls whether a substance is a drug for purposes of the reckless homicide statute. He cites no authority supporting his argument. However, assuming without deciding that a substance must be a drug under the Controlled Substances Act to also be a drug under the reckless homicide statute, we find the State established this fact.

Section 102(t) of the Controlled Substances Act defines the term "drug" in part as (1) substances recognized as drugs in the official United States Pharmacopoeia, Official Homeopathic Pharmacopoeia, official National Formulary, or any supplement to any of them, and (2) substances other than food intended to affect the structure of any function of the bodies of humans or animals. (Ill. Rev. Stat. 1991, ch. 56½, par. 1102(t).) Dr. Bartlett and Dr. Gregory testified that butane was listed in the National Formulary. In fact, during Dr. Bartlett's testimony, defense counsel introduced into evidence a photocopy of that part of the National Formulary listing butane. Defendant argues that just because a substance is listed in the National Formulary does not mean it is recognized as a drug in that publication. However, defendant does not advise how we are to determine when a drug can be listed in the National Formulary and not be recognized as a drug.

We also agree with the State's argument that the evidence established butane to be a substance intended to affect the structure of any function of the bodies of humans or animals. Hunter testified that he and defendant inhaled the butane to get "high." He also testified that after inhaling the butane he felt numb. Dr. Bartlett testified that if butane is inhaled it could act as an asphyxiant, and that inhaling an asphyxiant could cause one to become tired or stuporous and ultimately lose consciousness. Dr. Gregory testified that inhaling butane could cause loss of oxygen in the bloodstream, which could lead to dizziness, mood disturbances, hallucinations, and, ultimately, unconsciousness. Under this definition, butane is clearly a drug, at least in the manner used by Hunter and defendant. We therefore find the State established butane as a drug for purposes of the reckless homicide statute.

■ Defendant also argues the State failed to prove beyond a reasonable doubt that he was under the influence of butane at the time of the accident. He points to testimony of the two doctors and notes they testified only as to what effects inhaling butane might have on a person. Admittedly, the doctors also testified they knew of no test to determine whether a person had been inhaling butane. However, Hunter testified that both he and defendant inhaled butane about four times prior to the accident. The effect on Hunter was that he felt numb, but "pretty much" aware of his surroundings. He also testified that when he noticed the car slipping off the side of the road he called defendant's name. He could not recall whether defendant responded. Defendant was looking straight ahead and blinked his eyes as though focusing. At that point, Hunter grabbed the wheel. There was also testimony concerning defendant's belligerence and refusal to cooperate with paramedics and hospital personnel after the crash which, given the medical testimony, the jury might have inferred was caused by defendant's inhaling of butane. The weather at the time of the accident was clear, warm, and dry. The road where the crash occurred was straight and level. Although one's car might go off the road due to mere inattention, the jury might have reasonably inferred from the evidence that defendant's inattention resulted from his inhaling butane and its resulting effects. Although defendant denied inhaling the butane, he could give no explanation as to why his car slipped off the road and hit the median strip, other than to guess he was not paying attention.

A criminal conviction will not be reversed on appeal unless the evidence is so improbable or unsatisfactory that it raises a reasonable doubt of defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 276.) The relevant question is not whether the reviewing court believes defendant is guilty beyond a reasonable doubt but whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) Applying these standards, we find the jury's verdict was based upon sufficient evidence.

For the reasons stated, defendant's conviction and sentence are affirmed.

Affirmed.

McCULLOUGH, P.J., and KNECHT, J., concur.